All right, welcome back. Let's start with the next case which is 22-3240 Holt v. Foot Locker Retail. Mr. Thornberry for the appellant, you may proceed. Thank you. May it please the court. My name is Steve Thornberry. I represent Dan Holt on this appeal. We seek the court's order reversing the summary judgment entered by the district court on Mr. Holt's claims of whistleblower retaliation brought solely under Kansas state law. I would ask to reserve three minutes for rebuttal as I go forward. Mr. Holt was the most senior operations manager at the Foot Locker Distribution Center in Junction City, Kansas. He oversaw the inventory going in and out of the building and how it was documented and kept track of. The district court noted at page 12 of its order that Mr. Holt was the squeaky wheel about inventory issues and complaints that were going on at the Foot Locker Distribution Center. And on page 13 of its order, the court found the plaintiff raised, among other things, violations of financial laws. He raised violations of financial laws to his superiors. And yet the court granted summary judgment in part holding that plaintiff's complaints did not rise to the level of a complaint affecting general welfare. And we'll talk about that element as we go forward. And of course, as we get started, yes? I'm sorry, could you stop? You said he raised violations of financial laws. Correct. Can you point me to where he referred to it that way? I guess I'm interested in what was the whistleblowing that actually occurred? Absolutely. Not what he terms it later, but what did he actually whistle on? I have two responses to that. The first is my language that I just quoted is from the court's opinion at page 13. In regards to his exact language... Yeah, I understand what the court said. I'm asking you to point to the record to what he actually reported. The appendix, page 202, is we've listed out the statements. In December of 2019, receiving product in our building would be falsifying our inventory slash company records. We will have no part of it. And then that didn't happen, right? He said we won't do it. They didn't do it and they supported it. I believe that's correct, Your Honor. I believe the problem was remedied because of his complaint. That's right. Well, he didn't complain. It was his call, right? He got to decide I'm not going to do this. I'm not sure if in that instance there were other people who had final say, but absolutely, the problem did not happen because it was stopped. He would have no part in it and after some email exchanges, they said, you're right, we're not going to do that. No irregularities occurred. On January 3rd, this is on page 203 of the appendix, I made it clear to Todd Greener, my boss, that I was not going to bend the rules or do anything illegal. I probably told him I wasn't going to go to jail. That's correct, Your Honor. And this was in reference to what? To these inventory problems. What was he referring to? I probably told him I wasn't going to jail. I don't remember the exact issue that that one was. I believe it was the one that inventory was being brought into the building and they asked him not to mark it as received. And as he said at another time, at page 327 of the appendix, any inventory brought into the building will be received. And that's the issue because we're going to get to it. So all of the complaints were about whether inventory should or shouldn't be received. Correct. All of them were resolved as he wanted them to be resolved. It was his job, right, that he was in charge as the Senior Director of Operations. Right, but there were various people making various decisions at certain times. And sometimes he and his people were requested, don't track that on the inventory. Sometimes it was requested, put something on the inventory so that it shows up on the internet. Those were the issues. And what we're going to get to is, the law is, and it's the Kansas Blue Sky laws that we cited, and it's the SEC regulation, SX, that incorporates GAAP, General Accounting, General Accepted Accounting Principles. Do you have any case law where somebody just said that the GAAP principles are a matter of public concern, that compliance with them? Absolutely, Your Honor. We believe that's what the Dunn case says out of Missouri. What about the Love case out of Kansas? The Love case is an older case. It's a Court of Appeals case. We believe it's not good law because, among other things, it mentions that an internal complaint to your own superiors isn't sufficient under Kansas whistleblowing law, and that's since been debunked. So we don't think that's the closest analogous case. We think the closest analogous and persuasive authority is the Dunn case out of the state of Missouri. In Dunn, it was Enterprise Rental Car, and you had an accountant, and this accountant was asked to fraudulently, in his opinion, keep track of certain information on an IPO. Well, the IPO never happened. It didn't happen. But the accountant said, I'm not going to do that. You'd ask me to do something illegal that would violate GAAP, that would violate SEC, Section SX, and he was fired in the state of Missouri. Do they have the same standard that requires the whistleblowing activity referred to, or the whistleblowing referred to activities that violate the regulations of the law pertaining to public health, safety, or the general welfare? It's different language. Our position would be... That's important, isn't it? Kansas has been pretty strict and said you have to read that well. Respectfully, I think it is very important to know what the standard is, but I don't think they're distinctively different. Here's the law in Missouri. First, here's the law in Kansas. The first element is that a reasonably prudent person would have concluded that the employer was violating rules, regulations, or law pertaining to public health, safety, or general welfare. General welfare is not some onerous standard. There's no case that says that's a really high burden you have to make. General welfare just means what's good for the public. That's the reason we pass laws like laws... What cases are there in Kansas defining what general welfare is? I've not found any, Your Honor. Respectfully, I would suggest that that is because it's a known phrase that just means it's for the good of the public, and there's not been any debate over it. There's not been any over it. That's the Kansas standard. The Missouri standard is different. We would argue it's actually more difficult. The Missouri standard... Missouri has since passed a statute, so this is under the old common law standard, but their element was that an employee show that the employer discharged him in violation of a clear mandate of public policy. With the Missouri state law, what that indicated was you had to have a statute. How do we know what the public policy is in Missouri? Well, we look for a statute. We would argue it's the same thing in Kansas. How do we know what's for the general welfare? Well, we look and see what laws... Congress, legislature, SEC has passed regulations. He didn't complain about SEC violations. He did not complain about blue sky laws. I mean, would a reasonable person have understood his complaints about inventory control to be about SEC regulations? Which particular ones was he complaining about? Right. Again, it was SEC regulation SX, and the important part, Judge, is that this incorporates GAP. We've cited that language. Actually, it's language from the statute that says, I'm sorry, this is language from Dunn. Regulation SX requires that financial statements be prepared in accordance with GAP, generally accepted accounting principles, and statements not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate. That's what's illegal. Mr. Holt... SEC's not dealing with your internal documents, is it? Mr. Greener testified that all those documents, whatever information is recorded, ultimately makes its way onto financial statements. So the argument is that they should have known when he complained about these inventory issues that what he really meant was sometime in the future, an accountant who was preparing their financial statements for purposes of SEC filings that hypothetically were required might incorporate inaccurate information and therefore have a mistake. Respectfully, I don't think they had to have that level of specific knowledge. What we would suggest that they needed the knowledge of was, he's saying these things are illegal. You're asking me, the inventory manager, to do something that's illegal. That's the level of knowledge that we have. What we've cited that's important is the code of conduct, and the code of conduct lays out and reiterates what this is. Footlocker, as a company, admits that the law requires them to have accurate financial statements and accurate inventory. It even mentions inventory. We've got to track these, and that's in the record. Well, the bottom line is his report. Whatever he blew the whistle on has to pertain to a rule, and we're not talking about internal. He referred to SOPs, standard operating procedures. We're not talking about those. We're talking about a rule, a law, a regulation that pertains to health, safety, or general welfare. We can assume that general welfare is, in the realm of health and safety, something that impacts the public, the public's welfare. I think it seems like a big stretch to talk about these accounting controls and gap loopholes, and then infer from them some potential violations that never happen with blue sky laws. I agree, Judge. I think that is exactly the point. I think you're hitting on the key issue I'm going to try it one more time. It is for the general welfare. The whole point of blue sky laws are, and this is before the SEC, Kansas had the first set of laws, and people were being conned, and there were shenanigans. Kansas passed these laws that says, no, for public entities, we're going to have truth in advertising. We're going to have truthful financial statements. That's what the SEC incorporated as well. That's what's important. How could we say that that doesn't impact the general welfare? Now, are there hierarchies? Are there some things that are more important for the general welfare? Of course there are. There's a lot. Are there some that are at this level? Sure. Are there some that are a little lower? Perhaps. The key issue is what the court focused on, what Judge Moore is focused on, which is, is there a law? We have a law. So you're saying the violation of any law is for the public good? But any law that affects the general welfare, which we would say probably is most laws. I can imagine there might be a law that doesn't generally affect the public welfare or positively affect the public welfare, but a law affecting the public welfare or health or safety. Wasn't there an alternative basis for termination, which was his insubordination? And if we agreed with that, then we really wouldn't need to reach the whistleblower. Well, that's correct, Your Honor. I didn't have time to get to that point. We would contend that there's an issue of fact about that. We do contend there's an issue of fact about that. There was no insubordination in this case. In the record, they claim that he failed to support the We would contend they haven't proven that. Why do they have to? It's an at-will employment. Even if he didn't feel he was insubordinate, it's their choice. What's the fact question? Pretext, Your Honor, is they can fire him for any reason at all, except for the illegal one, like in this case, whistleblowing. And so what reason do you give? Well, you weren't supporting our COVID emphasis, and he was. It's in the record at the summary judgment state. We listed out how he did it. Well, but he wore a mask, but he also posted on the internet that they were sheep. That's the one thing he did. He sent a Facebook post. That's correct, Your Honor. He sent a Facebook post, and that's the one thing he did. In their statements, they wrote what are called talking points, and they wrote, here's the issues we're going to fire him for. They never mentioned the email, or Facebook post, rather. Because they fired him for insubordination, for a sarcastic comment he made about masks the morning that they had the company meeting. That's what Ms. Greener said. The comment is in the record. He said, for the record, we're being asked to wear masks. That's what he said. Where is the comment in the record? I didn't see that. It's at, I just had it here. Sorry. 198. Holt's exact words were, just for the record. I'm sorry, 198, Your Honor. Just for the record, we are being required to wear masks. That's what he said, and that's what Ms. Power said he was sarcastic about. We would say that's an issue of fact, whether that was sarcastic. Mr. Holt denied it. It doesn't matter whether it's true or false. All that matters is that it was a good thing, that that's what they believed. We're not a super HR department to come in and reevaluate those choices, right? Absolutely, Your Honor. I think that's a correct statement of the law. We believe we've put forth sufficient evidence from which a jury could infer the retaliation. I see I'm out of time. Thank you, counsel. Thank you, Your Honor. Good morning. May it please the court. My name is Ashley Harrison, and I represent Foot Locker Retail, Inc. The question before the court that we just focused on is whether Kansas whistleblower laws protect the types of internal communications that Mr. Holt had about internal inventory practices, again, internal to Foot Locker. Judge Moritz asked a question that I would like to immediately go to, and that is whether there's any case law that defines what is general welfare. Well, actually, the case law that appellant cited in his briefing, the Bile case issued by Judge Longstrom from the District of Kansas, does talk about general welfare. And in that case, Judge Longstrom was looking at allegations of theft and embezzlement. And he found in that instance, that was a... Is that Bile v. Anacom? I'm sorry? Did you say Bile v. Anacom? Yes, this is the Bile case. He said that that was an extremely close question on whether the conduct touches the general welfare. Looked at the Palmer v. Brown case from the Kansas Supreme Court in 1988 that said that public policy is extremely limited, that it has to be a clear mandate of public policy to fit into the whistleblower exception. And there, Judge Longstrom said that the Palmer court seems to have drawn a line that includes reporting of serious crimes within the ambit of laws pertaining to the general welfare. In that case, again, he was looking at theft and embezzlement. And that's similar to the other two cases from around the same time period that appellant cites in his briefing, the Ali case and the Lears case, both from the District of Kansas as well, that looked at theft and embezzlement. So serious infractions of criminal law is what general welfare was determined to mean. So, Kansas law does not recognize Mr. Holt as a whistleblower here because the concerns that he raised do not fall within the ambit of what Kansas law considers to be whistleblowing activity. Wouldn't the Kansas law, though, consider fraud, you know, something that would be covered by whistleblowing? Wouldn't financial misconduct be a form of fraud that might be cognizable? Well, I think Judge McHugh hit on a case that was particularly informative to this exact point, and that was the law of the Johnson County Parks and Rec District. The district court found that that was the closest case on this exact issue of internal practices that might potentially reach to a financial type violation. And there, the plaintiff had accused a supervisor of putting funds outside of budgeted accounts, and so there was a potential violation of budget laws. The court there found that even those types of budget laws do not pertain to public health, safety, and the general welfare. So to your exact point, that exact question about fraud, number one, fraud's not alleged here. But even if it were, the types of financial type disclosures that Mr. Holt contends are at issue have not been determined to fall within the ambit of whistleblowing activity. There's absolutely no case law saying that even if we were to look at Kansas blue sky laws and SEC regulations as something that was alleged to be violated, which it wasn't, there's no case law saying that that pertains to public health and safety and internal welfare. Could you pick up on that? That was, I mean, it seemed to kind of scream out at me that he never suggested any violations of the SEC or Kansas blue sky laws, but now it seemed to me that you had pretty much accepted that or were assuming that as you moved forward in the litigation. So is that even really before us? Have you granted him that? No, we have not granted him that. So I think if you look at our very first argument is that if you look at the record, the actual communications that took place, which Judge Moritz, you've pointed out earlier, were communications between Mr. Holt's team members and others at the Junction City Distribution Center about whether Foot Locker should receive product into inventory or not receive product into inventory. Those are going straight towards Foot Locker's internal standard operating procedures and policies, according to Mr. Holt, which, by the way, I would argue that Mr. Holt has not even shown through evidence in the record that any internal policies were actually violated, which is another point raised earlier. But the point is, so the internal inventory policies do not, they're internal, they have nothing to do with the public, certainly not public If you were to assume that it does somehow touch, the inventory practices somehow touch financial statements internal to Foot Locker and somehow that then goes beyond to reach financial reporting and disclosures filed for this publicly traded company, again, not alleged, but even if it did, under Love and similar Kansas case laws that strictly define what is the general welfare, it's insufficient to establish a whistleblowing claim. Is the Kansas standard different from the Missouri standard? Absolutely, Your Honor, and that is exactly the language that Your Honors picked up on earlier, the pertaining to public health and safety and the general welfare, that language is specific to Kansas. It's been in Kansas jurisprudence since the Palmer v. Brown decision from the Kansas Supreme Court. That language that limits whistleblowing activity is nowhere in Missouri law. And in fact, the district court below noted that and specifically said that if Kansas wanted every violation of any law to be whistleblowing activity, it would not have included that pertaining to public health and safety and the general welfare. The Missouri and Illinois standards that Mr. Holt relies upon only say that there should be a violation of clearly mandated public policy. The public policy doesn't have to be specific to serious infractions of criminal law like the Bile case decided. But again, if you look to what Kansas law has defined whistleblowing to be, there's absolutely nothing here that puts Mr. Holt into the whistleblower box. And in fact, going back to the Dunn and the Johnson cases from Missouri and Illinois, those cases, the facts at issue were distinguishable from here. In Dunn, you had an accountant who was raising allegations about the effects on accounting practices and his refusal to have a CFO who was concerned with accounting principles. Here, you don't have that because again, if you look at the record and if you look at the communication that Mr. Holt had with his team members and including his supervisor, Mr. Greener, these were communications about inventory practices. And a point that was made earlier was the fact that Mr. Holt was the senior director of operations. So these were requests that were coming into him that he was specifically involved in his role. He was doing his job by denying these requests, talking to his co-workers about these requests and determining what to do. There was never any sort of reporting as the courts find it. So another case that I wanted to point the court's attention to is the Taylor v. Home Depot case, as well as a similar case from the Kansas Supreme Court, Herman v. Western Financial. And those two cases looked at Kansas law and said that potential violations of internal operating procedures or internal policies are insufficient to state a claim for whistleblowing. The district court found that particularly on point here. And again, as we discussed earlier, Mr. Holt concedes that no actual violations of policy ever occurred. So for all of those reasons, Footlocker posits that the district court correctly found that no reasonably prudent person would find that Footlocker was engaged in conduct that violated law, rule, or regulation pertaining to public health and safety and the general welfare. But even if he could prove that point, as we discussed, he cannot establish that he engaged in actionable reporting. One thing that we haven't, that we've a little bit touched on, but haven't quite gone to the standard is what is actionable reporting? Well, under Kansas law, Mr. Holt had to seek out the intervention of higher authority. Mere disagreements or communications with co-workers on how he was going to take a stand on these requests, that's insufficient to establish a whistleblower report. Wasn't there an email to Mr. Greener, though, that would fall into a different category? I disagree, Your Honor, because all of the communications that involved Mr. Greener were, again, showing Mr. Holt's disagreement with the requests that were coming in and his decision making to deny those requests, again, as he would as senior director of operations. In fact, in the first instance that Mr. Holt alleges that is at issue, which is the December 20th, 2019 request to receive products into inventory, Mr. Greener actually responded to Mr. Holt and said, hey, thanks for bringing this to my attention. Let me know if you need assistance. Mr. Holt concedes that he never followed up on that. He never sought intervention from higher authority. So there is no actionable reporting here. But again, even if there were, Mr. Holt still cannot establish a prime officiate case of retaliation because there's absolutely no evidence that Ft. Walker discharged Mr. Holt in retaliation for any claim to whistleblowing. Even if he were a whistleblower and made a whistleblower report, there's no evidence whatsoever. If you look at just the temporal proximity, isn't there a presumption? I think it was five months or, no, how many weeks or months was it? But it's close enough in time that he gets a presumption, doesn't he? I have two responses on that, Your Honor. First of all, Mr. Holt attempts to pigeonhole his job into this December 2019 to April 2020 timeframe when talking about these requests. If you look at the record that was before the district court, he was actually discussing these concerns with his teammates all the way back to 2015. So you're really looking at a five-year period of time where he's engaged in fielding these requests. But because it's convenient at the appellate court stage, we're looking to the very last request was in April of 2020, and he was let go on May 25th of 2020. But to the point of whether temporal proximity can be enough, the case law that Mr. Holt the beginning point. That's the whole case. It alone will not support an inference where it is faced with compelling evidence to the contrary. And here there is a ton of compelling evidence to the contrary. If you look at the time period that we were in, it was April and May of 2020 when Footlocker had imposed these COVID-19 guidelines for its team members who were going into the Junction City Distribution Center because it was an essential business in trying to protect those employees. And you have, as we talked about the facts a little bit with Mr. Thornberry, you had a senior director, the most senior director of operations at the Junction City Distribution Center in charge of 600 to 700 employees who wasn't following the guidelines when he finally did follow or talked to Ms. Powers. When you say he wasn't following guidelines, if masks were optional, he didn't wear a mask. As soon as he was told, I expect you as a supervisor to wear a mask, you wore a mask. I think it is disputed that he wasn't told previously to that, that he needed to wear a mask. Ms. Powers in her deposition testimony said it multiple times. Are we here on summary judgment? No, but even to the extent that, yes, we are here in his favor. Yes. So he wore a mask. As soon as he was told, I expect you to wear a mask, you wore a mask. Correct. And that same night he goes home and posts this sheet post on Facebook, which he does not dispute. And he does not dispute that his subordinates followed him on Facebook as well as other coworkers. He doesn't dispute that it was reported to his supervisor. Did you indicate that was a Facebook post which got taken down? Did you indicate that was a reason for his termination? In the talking points, Ms. Powers specifically stated that his public expression of his disapproval of Foot Locker's guidelines was a reason for his... He referred to the Facebook post or was she just referring to... Public expression are the words that she used. And in the context of that, plus the meeting that occurred the next day where he's making these comments, again, as noted earlier, the court looks to the facts as they appear to the decision-maker. Well, the decision-maker was apparently a little confused because it started out the meeting saying that he had been violent and threatening people. Again, I think if you look at the entire context of what was going on and the comments that were made, that she testified she found to be directed at her and all of those things led to this decision. And to the pretext point, there's absolutely no evidence that any of those reasons were false. Mr. Holt concedes that he did all the things leading up to the end of his employment. And there's absolutely no evidence tying his alleged whistleblowing, even if there was a whistleblowing, to his termination. So I see I'm out of time. Happy to answer any other questions. Counsel, thank you very much. You're excused. We appreciate the arguments. Thank you. And case is submitted.